BOOKOUT, Judge.
Illegal possession of amphetamines; sentence: eight years imprisonment.
On August 9, 1973, a search warrant was executed against the appellant for the search of his residence located west of Neu-gent’s Truck Stop on Highway 43, Tuscum-bia, Alabama. John Cooke, Detective Sergeant for the City of Tuscumbia, executed the affidavit upon which the search warrant was issued. The affidavit was based upon hearsay information given to the officer by an undisclosed informant. The affidavit set out the premises containing amphetamines as, “Neugent Truck Stop and/or Lewis Neugent Residence,” however, the search warrant listed only the residence. Both were searched, but drugs were found only in the residence.
Since the search and seizure in this case are based solely on the hearsay information of an undisclosed informant, it is important to determine whether sufficient evidence establishing probable cause was before the issuing magistrate. The evidence upon which the warrant was issued is contained in the following affidavit:
“STATE’S EXHIBIT A
“STATE OF ALABAMA!
“COLBERT COUNTY J
“Personally appeared before me, Jerry M. Vanderhoef, Judge of the Colbert County Court of Colbert County, Alabama, John Cooke, who after first being duly sworn by me, and who is personally known to me, deposes and says as follows:
“I have received information from a person whose record of reliability for correctness has been good; that there is presently contained on the premises of Neugent Truck Stop and/or Lewis Neu-gent Residence, the residence being located some 150 to 200 yards West of said truck stop, the residence being reached by traveling West on a dirt road within approximately 50 feet of said truck stop. The truck stop to be searched is reached by traveling South on U. S. Highway 43 from its intersection with U. S. Highway 72 for approximately one to one and one-half miles; the truck stop being located on the West side of U. S. Hwy. 43. The truck stop being a truck stop and restaurant combination contained in one white block building, approximately 100 feet West of U. S. Hwy. 43, the residence of Lewis Neugent being reached by traveling West on a gravel road located approximately 50 feet North of said truck stop for a distance of 150 to 200 yards. The residence being the only dwelling house located on said gravel road, the residence being a brick or masonry building in the police jurisdiction of Tuscumbia, Colbert County, Alabama, illegal drugs, to-wit: Marijuana, amphetamines and barbiturates. The aforesaid informant stated that he saw the said iiiegal drugs on said premises described on the 9th day of August, 1973, 3 hours prior to making this affidavit. The informant also stated that Lewis Neugent, who resides at the above address, was seen selling amphetamines at the truck stop but the amphetamines are brought from the residence. This information was given to me by said informant August 9th, 1973.
*45 “Based on all the above information received from my reliable informant, I have probable cause to believe and do believe that there are contained in the residence of Lewis Neugent and Neugent Truck Stop, located at Highway 43 South Tuscumbia, Colbert County, Alabama, illegal drugs, to-wit:. marijuana, amphetamines and barbiturates.
“I make this affidavit for the purpose of securing search warrants for the purpose of searching Lewis Neugent and the premises located at Neugent Truck Stop and Lewis Neugent residence West of Highway 43 South, Tuscumbia, Colbert County, Alabama.
“/s/ John Cooke
Affiant
“Sworn to and subscribed before me, this the 9th day of August, 1973.
“/s/ Jerry M. Yanderhoef
Judge”
(Emphasis supplied.)
Appellant filed a motion to suppress the fruits of the search and seizure, which was overruled. During trial, he objected to admitting into evidence two bags of pills and one bag of capsules on grounds that such were obtained by an illegal search and seizure. The trial court overruled his objection and admitted the exhibits into evidence.
I
A search warrant based on hearsay of an undisclosed informant is not defective provided proper facts or circumstances are presented to the issuing magistrate upon which probable cause could be based. Fourth Amendment decisions by the United States Supreme Court require that magistrates make an independent determination of probable cause based upon evidence or “underlying circumstances.” The Court expressed in Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948):
“ . . When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent.”
That Court, further, has required that the issuing magistrate not depend solely upon the conclusions of the affiant. This limitation was applied to search warrants in Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933), and to arrest warrants in Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958). In the latter case, the Supreme Court stated:
“The Commissioner must judge for himself the persuasiveness of the facts relied on by a complaining officer to show probable cause. He should not accept without question the complainant’s mere conclusion that the person whose arrest is sought has committed a crime.
“The complaint contains no affirmative allegation that the affiant spoke with personal knowledge of the matters contained therein; it does not indicate any sources for the complainant’s belief; and it does not set forth any other sufficient basis upon which a finding of probable cause could be made.”
In 1960, the Supreme Court in Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, held that hearsay may be the basis for the issuance of a warrant by a magistrate. From that point forth, the problems confronting the police officer, the issuing magistrate and the appellate courts, due to hearsay information provided by an undisclosed informant, have been compounded. In 1964, in an attempt to clarify the law in this regard by establishing certain guidelines for the magistrate to evaluate hearsay information, the Court rendered the landmark decision of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723. That decision was further refined in a second landmark decision, Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).
Judge Charles E. Moylan, Jr., of the Maryland Court of Special Appeals, makes an excellent analysis of the problem with which we are here confronted in his “Hearsay and Probable Cause: An Aguilar and *46 Spinelli Primer,” Mercer Law Review, Vol. 25, p. 741 (1974). At pages 750-751, Judge Moylan states:
“ . . . Whether the magistrate is dealing with a primary, a secondary or even, theoretically, a tertiary source, he must still (1) assess the credibility of that source and (2) then weigh the information furnished if he believes it to be true. “Whether the information being evaluated is the direct observation of the affiant or is hearsay information, the issuing magistrate is required to perform the same intellectual surgery. In determining the existence vel non of probable cause, the magistrate must make two distinct determinations. The number and the nature of these determinations do not vary, whether the specimen being analyzed is direct observation or hearsay information. He must:
“(1) Evaluate the truthfulness of the source of the information; and “(2) Evaluate the adequacy of the factual premises furnished by that source to support the validity of the source’s conclusion.
“In the first instance, he is judging the integrity of a person. In the second instance, he is judging the logic of a proposition. .
“Just as the magistrate must satisfy himself as to the credibility of a primary source by administering an oath to him and by looking at him, so too must he, by some alternative means, satisfy himself as to the credibility of the secondary source. In neither case may he accept someone else’s conclusion in lieu of arriving at his own. Just as he may not permit an affiant’s assertion as to his own credibility to serve as dispensation for the oath, neither may he permit the affiant’s assertion as to his informant’s credibility to serve as dispensation for the required recital of all necessary data about that informant that will permit the magistrate to draw his own conclusion as to credibility. This, simply, is the ‘credibility/reliability’ or ‘veracity’ prong of Aguilar.
“Once the magistrate has decided that the informant is believable, he has still only half completed his ultimate determination. He must still decide what the information is worth. He has decided that the source is not lying, but he has not yet decided whether the source is mistaken. The magistrate’s second function is now to evaluate the information which he is accepting as true and to see what probabilities emerge from that available data. Again, he may not accept the conclusion of either the affiant-ob-server or the non-swearing informant. He must take from either of those sources his facts and then arrive at his own conclusion as to the significance of those facts.”
We have had Aguilar with us some fifteen years and Spinelli for nine years. While those cases placed somewhat of a burden upon law enforcement officers in composing an adequate affidavit, and upon a magistrate in determining the sufficiency of the affidavit, there should now have been sufficient time since those decisions were rendered that law officers, magistrates and trial judges should be familiar with the basic requirements enunciated in those decisions. Not only has this not happened, but we find great differences of opinion in most decisions rendered by appellate courts concerning the sufficiency of affidavits.
This Court, being bound by the decisions of the United States Supreme Court and the Supreme Court of Alabama, must apply to affidavits and warrants the tests set out in the opinions of those courts when such is brought before us on appeal. Those courts and this Court, repeatedly and with unanimity have pronounced the legal principle that a warrant is invalid where the supporting affidavit is nothing more than the bare conclusion of the affiant, as to the integrity and reliability of the unnamed informant, or as to the matter alleged in the affidavit. The courts differ, however, in application of *47 that principle of law to the facts in various cases.
In Aguilar, the affidavit read in part, “Affiants have received reliable information from a credible person.” In Spinelli, it was stated that the F.B.I., “has been informed by a confidential reliable informant.” In the instant case, the affidavit states, “I have received information from a person whose record of reliability for correctness has been good.”
We find the identical wording in the affidavit in Davis v. State, 46 Ala.App. 45, 237 So.2d 635 (1969), affirmed in State ex rel. Attorney General, 286 Ala. 117, 237 So.2d 640 (1970). There, the affidavit recited in summary form, “Information from a person whose record of reliability for correctness has been good . . . .” This Court reversed on grounds, inter alia, that such wording was an unsupported conclusion of the affiant. However, on certiorari the Alabama Supreme Court affirmed on other grounds, but held that the above wording in the affidavit was adequate to show the basis for the officer’s conclusion that the informant was reliable. The Court there stated that such wording was more than the showings disapproved in Aguilar and Spi-nelli.
Since the Alabama Supreme Court has held the above language to be adequate, it would appear that this Court would be bound thereby. While we recognize the import of the holding in State ex rel. Attorney General, supra, we likewise recognize that it was decided in 1970. Since that time, numerous holdings by the Federal courts as well as the tenor of some decisions by the Alabama Supreme Court itself would indicate that the language approved of in State ex rel. Attorney General may no longer be held to be valid.
We have analyzed a number of Federal cases as well as decisions by the Alabama Supreme Court and this Court wherein the conclusion of an affiant as to the reliability of an informer has been held to be sufficient. In each of those cases, there was substantially more underlying circumstances supplied by the affiant than in the instant case or in the Davis case, supra. We likewise note that the above quoted statement in the instant case is objective in nature whereas in most other cases, the statement concerning reliability of the informant has been subjective. For instance, in Funches, infra, after stating the conclusion that the informer was reliable and credible, the affidavit went on to state, “My informer is reliable because he has given me information in the past two months concerning narcotics, which has led to arrests and convictions in courts in Mobile County.” There, the officer was making a subjective statement as to the reliability of his informant. The informant was reliable because he had given the officer information. In the instant case, no such allegation is made. The statement in the instant case is a mere abstract conclusion that the information was from a person whose record for reliability and correctness has been good. No personal knowledge or personal dealings with the affiant is alleged to show reliability. Also see: Goodman v. State, 50 Ala.App. 281, 278 So.2d 729, cert. denied 291 Ala. 780, 278 So.2d 733 (1973).
For cases where a subjective allegation as to reliability has been tendered, or where substantiating facts and additional underlying circumstances have been given by the affiant, see: United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); United States v. Damitz, 495 F.2d 50 (9 Cir., 1974); Funches v. State, 53 Ala. App. 330, 299 So.2d 771, cert. denied 293 Ala. 752, 299 So.2d 778 (1974); Russell v. State, 53 Ala.App. 447, 301 So.2d 214 (1974); Buckles v. State, 50 Ala.App. 548, 280 So.2d 810 (1972).
The Circuit Court of Appeals, Fifth Circuit, in United States v. Acosta, 501 F.2d 1330 (1974), held an affidavit to be insufficient for want of facts to enable the magistrate to conclude that the informant was reliable. In the affidavit in Acosta, there was a recitation that the informant had on other occasions assisted Federal agents in initiating cases. In that case, the informant had been the source of information on which the magistrate had issued previous *48 warrants and therefore the magistrate, based upon his own personal knowledge and his past experience with the informant, issued the warrant. The Fifth Circuit held that to be insufficient; that the information must be supplied from the affidavit to the magistrate.
An affiant’s assertions as to the reliability of his informant was upheld by this Court and by the Alabama Supreme Court where such was bolstered by the statement that, “[t]his informer has given information on other occassions (sic) that has proven correct and has resulted in some arrests.” Additional underlying circumstances were also given to support the conclusion of the affiant in that case. Bates v. State, 51 Ala.App. 338, 285 So.2d 501, cert. denied 291 Ala. 773, 285 So.2d 506 (1973).
In United States v. Hill, 500 F.2d 315 (1974), the Fifth Circuit Court of Appeals held the affiant’s conclusion that his confidential informant was credible to be sufficient because the following additional underlying circumstances were given in support of the conclusion:
“ ‘. . . (1) the allegation of the affi-ant that he regarded the informant as “prudent”; (2) the detail provided in the tip; (3) the fact that the affidavit also alleged that the accused had a reputation for being a trafficker in nontax-paid liquor; and (4) the fact that the information given, with the allegations of the informant’s purchases, was a declaration against the informant’s penal interest.’ ”
We have discovered other Federal cases where the allegation as to reliability was upheld due to a declaration against the informant’s penal interest.
In United States v. Counts, 471 F.2d 422 (1973), the Second Circuit Court of Appeals held the recitation of reliability in an affidavit to be sufficient, but again there was more information supplied the magistrate than in the instant case. In Counts, there was a recitation that information previously received from the same informants had been reliable and that three arrests were pending grand jury action which had been based upon such information, with names and dates specifically supplied.
In Haynes v. State, 50 Ala.App. 96, 277 So.2d 372 (1973), we held an affidavit to be deficient for lack of underlying circumstances wherein the affiant merely concluded that his informant was “truthful” and his information was “reliable.”
While we agree that no specific “batting average” of an informant is mandatory to establish an informant’s reliability, the rule appears to be that sufficient facts or underlying circumstances must be given in the affidavit upon which the magistrate can make an independent determination that the informant is reliable. We have reason to believe that the unsupported statement that, “I have received information from a person whose record of reliability for correctness has been good,” will someday be held to be insufficient by higher authority than this Court. However, we have been unable to find a United States Supreme Court decision holding that language to be insufficient, and in light of approval given to that language by our Supreme Court in State ex rel. Attorney General, supra, we have no alternative but to hold it to be sufficient.
We must now press forward to the second prong of the Aquilar test; that of determining if sufficient underlying circumstances are set forth in the affidavit upon which the issuing magistrate may find probable cause to send officers of the law forth to search the residence of the appellant.
II
In reviewing the substance of the affidavit in question, we find that it meets the “time” test of Davis, supra, and Walker v. State, 49 Ala.App. 741, 275 So.2d 724 (1973), in that the informant states that he saw illegal drugs on the date of, and three hours prior to making the affidavit. It fails to meet other standards however.
Cates, P. J., writing for this Court in Horzempa v. State, 52 Ala.App. 153, 290 So.2d 217 (1973), affirmed 292 Ala. 140, 290 *49 So.2d 220, held the following recitation in an affidavit to be insufficient:
“ ‘Affiant has received information from two different reliable informants that they have been in the above described residence on several occasions recently and there have been drugs that are above described in the residence Both informants have made numerous drug buys for affiant in the past two weeks and their reliability has been established. The last buy was made three days ago and was a good buy. Both informants state the above drugs of Marihuana and Mescaline are now in the house which is described above . . . ’ ”
There Judge Cates wrote: “But the instant affidavit . . . does not state how the informants learned of the drugs being in the house. Nor does it show how they arrived at the statement as to the presence of drugs being there ‘now.’ Nor does it show whether the informants saw, touched, smelled, bought, or otherwise came in contact with the drugs on the several ‘recent’ occasions when they were in the residence.”
Thus, this Court concluded that the affidavit failed to give sufficient underlying circumstances from which the informants exhibited probable cause that the drugs were where they claimed them to be.
In Clenney v. State, 281 Ala. 9, 198 So.2d 293 (1966), the Supreme Court, through Justice Coleman, stated:
“The affiant must state evidence, other than hearsay, to justify a conclusion that the article to be searched for is where he says it is. The affiant must state evidence, other than hearsay, to justify a conclusion that the hearsay is reliable.
. ” (Emphasis supplied)
In evaluating “the adequacy of the factual premises furnished by that source to support the validity of the source’s conclusion,” we find the strongest statement in the affidavit, to-wit:
“ . . . The aforesaid informant stated that he saw the said illegal drugs on said premises described on the 9th day of August, 1973, 3 hours prior to making this affidavit . . .”
As strong as that statement is, it is still uncertain for failure to state on which of the two premises described, and in whose possession the informer saw those drugs. Did the informant see them at the truck stop, or at the residence, or at both places? That statement refers to “said premises described,” which appears in the affidavit as “Neugent Truck Stop and/or Lewis Neu-gent Residence.”
The affidavit goes on to read: “ . . The informant also stated that Lewis Neugent . . was seen selling amphetamines at the truck stop but the amphetamines are brought from the residence . . .” (Emphasis supplied)
Here, the affiant does not tell us that his informant personally saw the appellant selling amphetamines, only that the appellant “was seen” doing so. “Was seen” by whom and when? He states that appellant was seen selling amphetamines at the truck stop, but the warrant was issued to search the residence. He does not say that his informant saw amphetamines at the residence, or that he personally saw them brought from the residence. How the informant determined this, is left to conjecture and speculation.
In Haynes v. State, 50 Ala.App. 96, 277 So.2d 372 (1973), in a similar situation, Judge Harris stated:
“ . . . Affiant does not set forth the underlying circumstances surrounding his observation of the ‘stolen parts’ entering the premises described by him. He does not say where he was when he claims to have seen what he said he saw. . . ”
See also Justice Faulkner’s affirming opinion of Horzempa, supra.
In Miller v. State, 54 Ala.App. 230, 307 So.2d 40 (1974), the affidavit stated that the informant had seen the defendant with the drugs in his possession. He also stated that he had obtained illicit amphetamines from *50 the defendant. In reversing that case, this Court stated that the affidavit was insufficient to support a search warrant of the appellant’s premises, stating:
“ . . . The warrant authorizes a search of the business premises of appellant and not a search of his person. “Nowhere in the affidavit does it appear that the informer had seen the drugs on the premises of the appellant. . . . ”
Thus, using the reasoning in Miller, it is difficult to see how a magistrate, on being informed that drugs “were seen” being sold at the truck stop, would authorize a search warrant to be issued for the residence. The majority of this Court, being bound to apply the tests of Aguilar and Spinelli, therefore, find that the instant affidavit fails to state sufficient facts and underlying circumstances to exhibit probable cause to issue a search warrant for the residence of the appellant. The appellant’s motion to suppress should have been granted, and the fruits of the search should not have been admitted in evidence over objection. For comparison of the instant affidavit with affidavits in similar cases held to meet the minimum legal requirements of validity, see: Funches v. State, 53 Ala.App. 330, 299 So.2d 771 (1974), cert. denied 293 Ala. 752, 299 So.2d 778, cert. denied 419 U.S. 1114, 95 S.Ct. 793, 42 L.Ed.2d 813 (1975), and Funches v. State, 56 Ala.App. 22, 318 So.2d 762, cert. denied 294 Ala. 757, 318 So.2d 768 (1975). Likewise, Cates, P. J., in Tyler v. State, 45 Ala.App. 155, 227 So.2d 442, cites us to Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, as to how to compose a narrative affidavit.
This Court realizes that it is a disheartening experience to a conscientious law enforcement officer seeing an otherwise valid case dissolve when his search warrant has been held to be invalid on appeal. A law enforcement officer, not trained as an attorney, armed with the results of his investigation or information furnished by his informant, goes before a magistrate who is a judicial officer and who is more familiar with the requisites for a valid affidavit. Where, as here, the affidavit fails to set forth sufficient underlying circumstances upon which a valid warrant may issue, the magistrate may, and in most cases should, question the officer for additional facts and take sworn testimony bearing on the “underlying circumstances.” In this way, an otherwise defective affidavit may be bolstered by sworn testimony, thereby saving the warrant and the fruits of the search. Oliver v. State, 46 Ala.App. 118, 238 So.2d 916 (1970); Funches (1974), supra. Or, the magistrate may direct the officer to furnish a more comprehensive affidavit, if such is possible, and save the State the expense and effort of a futile trial.
Ill
The appellant argues other issues: (1) the misdescription of the premises to be searched, and (2) allowing Officer Cooke’s affidavit to go to the jury as an exhibit, where the affidavit states that Neugent was seen selling amphetamines, whereas he is only charged with possession in the indictment. While these issues raise serious doubts with this Court, we pretermit discussion and ruling thereon as this case must be reversed and remanded on the grounds hereinabove set forth.
REVERSED AND REMANDED.
CATES, P. J., and TYSON and HARRIS, JJ., concur.
DeCARLO, J., dissents.