TYSON, Judge.
Geraland Gass, alias “Jug” Gass, was charged by indictment with the unlawful possession, sale, or furnishing of marijuana, a controlled substance, in violation of Title 22, Section 258(47)(a), Code of Alabama 1940, Recompiled 1958. The jury found the appellant “guilty as charged,” and the trial court, after obtaining a presentencing report, set punishment at five years imprisonment. It is from the overruling of the appellant’s pretrial motion to suppress and motion for new trial, each challenging the search and seizure in the instant case, that the appellant prosecutes this appeal.
I
The affidavit and search warrant are hereinafter set forth, as follows (R. p. 209):
“THE STATE OF ALABAMA COUNTY OF JACKSON
“AFFIDAVIT
“Before me John L. Haislip, Judge of the District Court of Jackson County personally appeared Hoyt A. Jones, who being duly sworn, deposes and says that he has probable cause to believe and does believe that M. Sally Robinson, Route 1, Bryant, has in her possession marijuana and controlled substances at described property. Travel West from the Bryant Post Office on a paved road ¼ mile, turn South on a paved county road and travel ¼ mile. Turn west on a paved county road and travel 3.5 miles to a frame duplex house, dark in color. Sally Robinson lives in West side. Based on surveilance, undercover investigation and information from a reliable informant, whose information has proven reliable, in the past, stated on February 13, 1977, that Sally Robinson has in her possession one pound of marijuana, Demerol, and is selling the contraband from said duplex apartment.
“S/ Hovt A. Jones Affiant
“Sworn to and subscribed before me on this the 14 day of Feb.. 1977.
“S/ John L. Haislip Judge of the Jackson County District Court
“SEARCH WARRANT
“THE STATE OF ALABAMA, JACKSON COUNTY TO THE SHERIFF OF JACKSON COUNTY:
“Proof by Affidavit having been made this day before me, by Hoyt A. Jones, “You are therefore commanded to make immediate search of residence of M. Sally Robinson, and if you find the same or any part thereof, to bring it forthwith before me, at the Jackson County Courthouse in Scottsboro, Alabama.
“Dated this the 14 day of Feb.. 1977.
“S/ John L. Haislip Judge of the Jackson County District Court”
Pursuant to the foregoing affidavit and search warrant, a group of ABC undercover officers and Jackson County deputy sheriffs drove to the farm residence of Sally Robinson, in Jackson County, on the night of February 14, 1977. There some four or five officers first knocked on the door and asked for one Anna Lisa Robinson, and upon being advised that this was a five year old child, the officers asked for the mother. The officers were armed with pistols and rifles. Some were “dressed in uniforms, and others were in hunting outfits.” All in all, some eighteen officers made a general search of the residence, as described in the above affidavit and search warrant, and seized a 30-30 rifle, a .12 gauge shotgun, and two pistols, a .38 and a .22 (R. p. 20).
*906 The appellant, Geraland Gass, was charged with the unlawful possession of firearms and placed under arrest while seated on the hood of one of the officers’ vehicles parked in the yard of the home.[1]
Mrs. Gass testified at trial that she was twenty-nine years of age, an immigrant from the Phillipines, and had been married to the appellant for something over two years, that the home in Jackson County was hers.
The appellant testified at the suppression hearing, and at trial, that he was told he was “under arrest for the gun” (R. p. 36).

The testimony of each witness, including each officer who participated in the search of the residence of Sally (Robinson) Gass, indicated that no contraband or illegal drugs of any kind were found at this residence.

Instead of relying upon the affidavit and search warrant, the State, in this case, relies instead upon the “consent,” allegedly given by Geraland Gass to several ABC agents and deputy sheriffs while in the yard of the Jackson County farm, and based upon which “consent” the State seeks to charge him with the unlawful possession of marijuana found approximately twelve miles away in a farm house in DeKalb County, Alabama.
Without dispute, Mr. Gass had been renting the farm in DeKalb County to one Richard Jenkins for $75.00 per month. Mr. Jenkins was employed at a furniture store in Atlanta, Georgia. According to the appellant, Jenkins had been renting the De-Kalb County farm for some six to eight months prior to the time of the search and seizure of items therein on the evening of February 14, 1977.
II
While we believe that the search warrant in the instant case leaves a good deal to be desired, insofar as naming the person and the place to be searched, as required by the provisions of Section 15-5-3, Code of Alabama 1975, and also some of the underlying circumstances which show the basis of the informant’s conclusions, that the items to be seized were where they said they were, see Miller v. State, 54 Ala.App. 230, 307 So.2d 40 (1974); and Pilkington v. State, 343 So.2d 548 (Ala.Cr.App.1977), as well as circumstances which give reasonable cause to believe that the informant is a credible person, Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), nevertheless, in light of Davis v. State, 286 Ala. 117, 237 So.2d 640 (1970); and Neugent v. State, Ala., 340 So.2d 52 (1976), we move to consider the two issues, which we believe are dispositive of the instant appeal.
Ill
An immediate reading of the search warrant in the instant case brings forth the realization that it authorizes a general exploratory search.
As stated by Judge Harris, in Heavy v. State, Ala.Cr.App., 336 So.2d 199, cert. denied, Ala.Cr.App., 336 So.2d 202, general exploratory searches are forbidden by federal and state courts alike. See cases cited.
As heretofore noted, no contraband whatsoever was found at the Jackson County farm house, which residence was the subject of the search warrant in this cause.[2]
In considering the next issue presented by the record, based upon the State seeking to justify the intrusion into the farm house in Dekalb County, several factors must be considered.
Mr. Justice Blood worth has set forth the several exceptions to the warrant requirements of the Fourth Amendment in an opinion known as Daniels v. State, 290 Ala. 316, 276 So.2d 441 (1973). Inasmuch as the State, without dispute, has pointed out that the appellant was under arrest, we must consider whether or not the “search inci *907 dent exception” is applicable in the instant case.
In Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409 (1925), the Supreme Court of the United States observed that a search incident to a lawful arrest cannot be extended to places other than the locale of a defendant’s home, which was described in the warrant. More recent authorities are in accord, United States ex rel. Linkletter v. Waiker, 323 F.2d 11, affirmed, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1963). See also, Annotation, Search and Seizure, 19 A.L.R.3rd 789, § 24.
Moreover, in dealing with rented premises, or multiple unit dwellings, the address must be specifically set forth. See Hutto v. State, 50 Ala.App. 636, 282 So.2d 75. See also, Annotation, 11 A.L.R.3rd 1330.
In the instant case, the State attempts to argue that the search and subsequent seizure at the farm house, leased to Jenkins, in an adjoining county, some twelve miles away, were based upon the “consent” of the appellant given while under arrest in the yard of his Jackson County farm house.
The appellant testified that he went along and told them he would show them how to get there, but that he did not have a key to the residence, and had so explained this to the officers; that, without dispute, upon arrival, he kicked open the rear door, built a fire, and allowed the officers to search inside. See R. pp. 167-170. There seems to be no dispute that Mr. Gass looked surprised when marijuana was found in a closet in the bedroom area, as well as a small quantity of lose material, which was subsequently placed in a cardboard box, and found in the porch area, along with a set of small scales. The front porch was padlocked.
This Court, in Herriott v. State, Ala.Cr.App., 337 So.2d 165, cert. denied, Ala., 337 So.2d 171 (1976), passed upon the issue of a consent search by pointing out the following:
“In discussing the question of whether or not consent was voluntarily given, the Supreme Court of the United States, in Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854, stated:
“ ‘. . . Rather it is only by analyzing all the circumstances of an individual consent that it can be ascertained whether in fact it was voluntary or coerced. It is this careful sifting of the unique facts and circumstances of each case that is evidence in our prior decisions involving consent searches.’
“In evaluating the circumstances surrounding the acquiescence to lawful authority, involved in a consent case, Judge Moylan of the Maryland Court of Special Appeals used the following language in Whitman v. State, 25 Md.App. 428, 336 A.2d 515: #
“ ‘. . . The lesson articulated by Bumper and Schneckioth in the area of search consents is that the individual subjected to the search may indeed be submitting rather than consenting, even in an atmosphere of relative cordiality because of the presence of psychological forces as potent and effectual in achieving a “consent” as the traditional techniques and familiar instruments of physical “persuasion.” We must, we find, be guided by the holding in Bumper that a consent which is actually simple acquiescence to lawful authority is not voluntary and, when the defendant is in custody, by the concern expressed in Schneckioth that “in examining all the surrounding circumstances to determine if in fact the consent to search was coerced, account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents.”
“ ‘While each case must rest for decision upon its own facts and the “totality of the circumstances,” an arrest without probable cause followed by custodial prodding for the arrestee’s consent to a search, combined with police representations that the issuance of a warrant will be practically automatic — these are circumstances calculated only to persuade *908 the individual that insistence upon Fourth Amendment guarantees will secure for him merely a delay of the inevitable search rather than the protection against unreasonable search and seizure to which he is constitutionally entitled
“Similarly, Mr. Justice Faulkner, speaking for our Supreme Court in Lietz v. State, 291 Ala. 133, 279 So.2d 116, stated:
“ ‘Unless we enforce the restrictions of the Fourth Amendment and Article 1, § 5 of the Alabama Constitution on searches and seizures, an old saying will have to be revised. A man’s home will no longer be his “castle,” but, his “open house” for everyone with a shred of governmental authority who wants to come inside. This cannot be permitted.’
“Mere submission to police authority will no? suffice. Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797; Knox v. State, 42 Ala.App. 578, 172 So.2d 787, cert. den. 277 Ala. 699, 172 So.2d 795.”
We have carefully considered the circumstances, as established by the record in the instant case, and are firmly of the opinion that Mr. Gass simply accompanied the officers, in the officers’ automobile, to the adjoining county because of their request and direction. A group of fifteen to eighteen armed ABC agents and deputy sheriffs, who requested information and permission to visit the farm in the adjoining county, and to search therein, did scarcely leave the appellant any alternative. He simply acquiesced in their demands. At their direction, he kicked open the rear door because he, himself, no longer had a key to the farm house. The officers then went inside and made their search and subsequent Seizures of the marijuana.[3] Without dispute, these premises had been leased out approximately six to eight months, and possibly longer. Mr. Gass, the appellant, no longer had a key. Viewing all the attendant circumstances, as shown by this record, as we are required to do, we are of the opinion that the “consent” in the instant case was not voluntary, but was mere submission to lawful authority. We are further of the opinion that, because of this, the appellant’s motion to exclude the seized marijuana and scales should have been granted. Because of the several deficiencies, as herein pointed out, we have no alternative but to reverse and remand this cause.
REVERSED AND REMANDED.
All the Judges concur.

. Approximately twelve or thirteen years prior to the incident in question, the appellant had been found guilty of a Dyer Act violation in the Federal District Court; hence, this charge.

. The search warrant in this case was subsequently held invalid by the Circuit Court of Jackson County, Alabama.

. Moreover, we are further of the opinion that the State failed to properly prove “possession of the subject marijuana in the appellant.” Radke v. State, 52 Ala.App. 397, 293 So.2d 312, affirmed 292 Ala. 290, 293 So.2d 314 (1974). See also, Fields v. State, Ala.Cr.App., 333 So.2d 861 (1976).